**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

RANDY GROSS and BETH GROSS,

       Plaintiffs,

       v.

HOWARD CHAPMAN and ADAM
CHAPMAN,

       Defendants.

Case No. _19-2743_____

Plaintiff Demands a Trial by Jury

**COMPLAINT**

Plaintiffs, Randy Gross ("Randy") and Beth Gross ("Beth") by their undersigned attorneys and for their complaint against Defendants Howard Chapman ("Howard") and Adam Chapman ("Adam") state as follows:

**INTRODUCTION**

1.    This is a case in which Howard Chapman ("Howard") and Adam Chapman ("Adam") collectively referred to as the ("Chapmans") engaged in extreme and outrageous conduct directed against the Plaintiffs Randy Gross ("Randy") and Beth Gross ("Beth") collectively referred to as the ("Grosses"). The Chapmans surreptitiously used an eavesdropping device to overhear and record private and highly personal conversations of the Grosses without their knowledge or consent. These actions were intended to embarrass the Grosses, intrude on their privacy, put them in a false light and intentionally inflict emotional distress. The Chapmans' conduct violated both statutes of the United States of America 18 U.S.C. §§ 2511, 2520 and the State of Illinois 720 ILCS §5/14-1 *et seq*. as well as Illinois common law. The Grosses are entitled

to damages, punitive damages, injunctive relief and attorney's fees arising from the Chapman's conduct.

**A.**   <u>**Jurisdiction and Venue**</u>

2.     The jurisdiction of this Court is proper under 28 USC §1331.  This case is a civil action under the laws of the United States of America 18 USC §2511, 2520 (Count I - Count III). This Court also has jurisdiction under pendant jurisdiction of claims arising under applicable statutes, 720 ILCS §5/14-1 *et seq* (Counts IV-VI) and Illinois common law (Counts VII and VIII) under pendant jurisdiction.  The non-federal claims arise from a common nucleus of operative facts such that they should be tried in one proceeding.  The district court has supplemental jurisdiction under 28 USC §1367.  Each of the claims represent a part of the same case or controversy.

3.     The defendants reside in this judicial district.  The defendants are residents of the State of Illinois.

4.     This judicial district is where a substantial part of the events or facts giving rise to the claims occurred.

5.     Venue is proper under 28 USC §1391(b).

**B.**   <u>**The Parties**</u>

6.     Randy Gross ("Randy") and Beth Gross ("Beth) are husband and wife.  They are residents of Palm Beach County, Florida.

7.     Aliza Gross ("Aliza") is the daughter of Randy and Beth.  She is a resident of Cook County, Illinois.

8.     Howard Chapman ("Howard") and Adam Chapman ("Adam") are residents of Cook County Illinois.  Howard is the father of Adam.  Howard is the owner of H Kramer & Co. Adam is employed by H Kramer & Co.

2

9.      Dale Chapman ("Dale") is the mother of Adam and the wife of Howard.

**C.      Adam and Aliza Became Engaged and Lived Together in Adam's Home.**

10.     During the year of 2017, Adam and Aliza met and began dating.  Aliza and the Grosses believed that the relationship became a happy, loving and trusting relationship.

11.     The relationship progressed and in August of 2017, Aliza and Adam began living together in a home owned by Adam at 1007 N. Dearborn Street in Chicago, Illinois ("The Residence").  In February, 2018 Adam proposed to Aliza and they became engaged to be married.  The wedding was set for October 2018.  Aliza and the Grosses reasonably believed at that time that Aliza's relationship with Adam, their engagement and their plans to marry were based on mutual love, respect and trust.

12.     In reliance on Aliza's engagement to Adam, and with Adam's knowledge, Randy and Beth paid more than $100,000 for wedding preparations.  The funds were advanced because the Grosses believed that Adam loved, respected and wanted to marry their daughter Aliza.

13.     While living with Adam at The Residence, Aliza had a reasonable expectation of privacy.  Aliza was unaware that any audio recording device existed within The Residence.  While in The Residence, Aliza believed that all of her telephone and face to face conversations outside the presence of Adam were private.

14.     Randy and Beth would frequently communicate with their daughter Aliza by telephone and in person at The Residence.  Randy and Beth believed that their conversations with their daughter were private.  These conversations regularly involved personal and sensitive family matters.

**D.      Adam and Howard Secretly Installed Audio Recording Device in The Residence.**

15.     In March 2017 Adam installed a video surveillance camera when Aliza began spending significant time at The Residence, Adam advised Aliza that the video surveillance

camera was for security purposes and for insurance purposes. Adam intentionally never advised Aliza that the purported video system included the ability to monitor and record audio conversations in The Residence. This included the ability to record sound in areas in The Residence far away from the location in which the purported video surveillance system would be able to visually observe and record activity.

16.     Unknown to Aliza, Randy and Beth, Adam with the assistance of Howard installed a recording device that actually was able to eavesdrop on conversations being conducted at The Residence. The recording device recorded telephone conversations which Aliza conducted on her speakerphone as well as other personal conversations conducted in The Residence.

17.     Neither Howard nor Adam ever informed, apprised, revealed or made Aliza, Beth or Randy aware of the audio recording device they had installed in The Residence.

18.     Howard and Adam intended to keep the existence of the audio recording device concealed from Aliza and the Grosses so they could surreptitiously record their personal conversations. This was done in an apparent effort to control and manipulate Aliza's relationship with her parents and others. It appears that one of the goals of the Chapmans' was to use the recordings to separate Aliza from her existing family so that the Gross family would have little, if any, relationship with Adam and Aliza after the wedding.

**E.**     **Adam's Sister Insists on Her Infant Daughter Being Featured in the Wedding.**

19.     Throughout the planning stage the wedding was designed as an adult only formal event, including acknowledgement of the ceremony's adult only participation. Nonetheless, months later, Adam's sister Ashley Heller ("Ashley") insisted the adult only wedding ceremony be changed to showcase her infant daughter and, in an attempt to force this change, the Chapmans engaged in egregious conduct intent on inflicting emotional distress as a means to get their way.

20.     On the morning of June 27, 2018, Adam phoned Aliza.  He told her that Ashley said she would not attend the wedding if her infant daughter was not featured in the wedding ceremony.  This conversation was initiated by Adam from his place of work at H. Kramer & Co. to Aliza at The Residence.  Howard and Adam were together at work that day.

21.     Adam told Aliza that if Ashley did not attend the wedding his parents would never forgive Aliza or her parents and that it would forever disrupt and destroy her relationship with Adam's family.  Aliza was advised that she needed to persuade the Grosses to meet Ashley's demands to avoid irreparable harm with her future in-laws.  Aliza advised Adam she would immediately call her parents to discuss this matter.

**F.     Adam and Howard Secretly Record Telephone Conversations between Aliza and Her Parents without Their Knowledge or Consent.**

22.     Immediately after her conversation with Adam, Aliza called her parents from The Residence.  No other person, including Adam, was present at The Residence at the time.  Aliza made the call from her cellphone utilizing the speakerphone.  The Grosses and Aliza had a reasonable expectation that their conversation would be private.  Neither the Grosses nor Aliza consented to the recording of the conversation.

23.     Unknown to the Grosses at the time, Howard and Adam listened to and recorded the private conversations of the Grosses and Aliza on June 27, 2018 (Recorded Conversation). Howard and Adam surreptitiously recorded the conversation to derive a benefit and information from the use of the recording device.  Neither Aliza nor the Grosses consented to Adam and/or Howard listening to or recording their private conversation.

24.     Adam and Howard used the recording device in a surreptitious manner for the purpose of overhearing, transmitting and recording a private conversation to which they were not a party.

25.     Aliza and her parents talked freely and openly during their private conversation regarding the wedding and expressed their frustrations and disappointment with the hostile and divisive environment created by the threats and coercive behavior exhibited by Adam, his parents Howard and Dale and his sister Ashley.  Aliza and her parents intended and reasonably expected that the contents of their conversation were private and would be heard only by the parties to the conversation.  Aliza and her parents talked for about thirty minutes.

26.     During the course of their conversation, Randy suggested that the Chapman and Gross families meet at the Grosses home in Highland Park, Illinois to discuss these matters so as to not disrupt the intended wedding of Adam and Aliza.

**G.      Aliza Learns That Adam Had Recorded Her Private Phone Call.**

27.     At the end of the eavesdropped conversation, at approximately 8:27 a.m., Aliza telephoned Adam to request that Adam and his parents meet with Aliza and her parents at her parents' home in Highland Park to try to resolve their differences.  When Aliza relayed the request for the meeting, Adam, without even contacting his parents, stated that his parents were unwilling to meet with the Grosses.

28.     The only way Adam's parents could have known about the suggestion to meet was if Howard had already listened to the conversation between the Grosses and Aliza.

29.     Later that day, Adam texted Aliza at her workplace telling her to come straight home after work.  At The Residence, Adam disclosed to Aliza that while at work he had turned on the remote access to the audio recording device and overheard the conversation between Aliza and her parents.  Adam chastised Aliza for not berating her parents and demanded Aliza obtain apologies from her parents for the statements they privately shared with Aliza.  Adam threatened to end the engagement if Aliza's parents did not apologize to his family.  When Aliza was

unwilling to do so, Adam insisted Aliza pack a bag and leave their home immediately. Emotionally distraught, Aliza drove to her parent's house.

30.     Later that same evening Adam and his parents agreed to a face to face meeting between the families at The Residence.

31.     During that meeting, Howard admitted to Aliza and the Grosses that their private telephone conversation had indeed been recorded. Further, during that meeting, Howard *confirmed* that Adam, Howard and Dale Chapman (Howard's wife) had all listened to the recording of the private conversation.

**H.     Howard Threatens to Use the Secret Recordings to Injure and Embarrass the Gross Family.**

32.     Aliza and her parents had no warning of the eavesdropping, by Howard, Adam and Dale Chapman. At the meeting, Howard, threatened to disseminate the eavesdropped conversation to others in an attempt to (i) embarrass the family, (ii) coerce Aliza's parents into changing the ceremony to appease Ashley and (iii) turn Aliza against her parents.

33.     Howard boasted during the meeting that he had many devices at his plant to monitor the employees of H. Kramer & Co. and that it was his right to listen in on the Grosses private conversation as if they were company employees. On information and belief, members of the Chapman family had been parties to monitoring and the interception of communications which they used to cause severe emotional distress for personal gain.

34.     Howard also threatened to reveal the recordings of the eavesdropped private conversation to others in order to embarrass Randy and Beth and presumably reduce their standing both with their friends and in the community. Howard even challenged Aliza's relationship with the Grosses by stating "we can give you a beautiful life" a clear implication that her current life was flawed and an effort to put distance between Aliza and her parents.

35.    On Friday of that same week Aliza requested that Adam remove the recording device from the inside of their shared home.  Aliza explained to Adam that she is unable to live in a house where her private conversations are being recorded.  Adam refused her request.

36.    Aliza told Adam she could not live in The Residence with the recording device.

37.    Adam then abruptly stated he was ending the engagement and insisted that Aliza leave immediately, even though her car was twenty miles away.

38.    The wedding was subsequently cancelled and Adam and Aliza were never married.

39.    The Grosses had advanced over One Hundred Thousand Dollars ($100,000.00) in deposits for the wedding which could not be recovered.

40.    Randy and Beth do not know the extent of the exact number of recordings of their conversations.  They are informed and believe that numerous recordings of their conversations have been made by the Chapmans, in addition to and including the conversations between the families on June 27, 2018 at The Residence.

41.    The Recorded Conversation or segments therefrom, have also been disseminated to others.

42.    Aliza suffered severe emotional trauma arising from Howard and Adam's eavesdropping, and their subsequent abusive actions.

43.    The Grosses have endured severe emotional distress as a result of the emotional damage to their daughter coupled with the Chapmans' intentional and deliberate harassment and coercive actions.  The Grosses have suffered significant damages as a result of the facts set forth above.

44.     Adam and Howard have subsequently used and disclosed the recordings without the consent of the Grosses for the purpose of embarrassing them and to diminish their standing in the community.

## COUNT I
### (Damages for Violation of the Federal Anti-Eavesdropping Statute)

45.     Plaintiffs reallege paragraphs 1 to 44 of the General Allegations of the Complaint as paragraph 45 of Count I.

46.     18 U.S.C. §2511 expressly provides that any person who:

$$* \quad * \quad * \quad *$$

(a)     intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

$$* \quad * \quad * \quad *$$

(d)     intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection.

$$* \quad * \quad * \quad *$$

Shall be subject to a civil suit as provided in the statute.

47.      In an action under 18 U.S.C. §2520(b) appropriate relief for the violation of the statute includes . . .

(1) "Such preliminary and other equitable or declaratory relief as may be appropriate;

(2) damages under subsection (c) and punitive damages in appropriate cases; and

(3) a reasonable attorney's fee and other litigation costs reasonably incurred."

48.    Under Section 18 U.S.C.A § 2520(c)(2) the damages which may be recovered are determined as follows:

   (i)    The sum of the actual damages suffered by the plaintiff . . . .; or

   (ii)   Statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

49.    Howard and Adam Chapman intentionally eavesdropped upon the Grosses, and used the information knowing that it was obtained without the consent of Aliza, Randy and Beth, in violation of 18 U.S.C.A § 2511.

50.    Howard and Adam are liable for the actual damages suffered by the Grosses or statutory damages of $10,000.00 for each of the violations that occurred, whichever is greater.

51.    Howard and Adam Chapman are liable for reasonable attorney's fee and other litigation costs incurred in this proceeding.

## COUNT II
### (Punitive Damages for Violation of the Federal Anti-Eavesdropping Statute)

52.    Plaintiffs reallege paragraphs 1 to 51 of Count I as paragraph 52 of Count II.

53.    Punitive damages are appropriate in this case.

54.    The actions of the Chapmans were intentional.

55.    The violation of the plaintiffs' federally protected rights was wanton, reckless and malicious.

56.    Punitive damages should be imposed for purposes of retribution and deterrence.

57.    Howard and Adam should be liable for punitive damages.

## COUNT III
### (Injunctive Relief under the Federal Anti-Eavesdropping Statute)

58.    Plaintiff reallege paragraphs 1 to 51 of Count I as paragraph 58 of this Count III.

59.     Under 18 U.S.C.A §2520(b)(l) the court may enter such preliminary and other equitable or declaratory relief as may be appropriate.

60.     The Chapmans have disseminated the recorded conversation and have continued to disseminate the contents of the recorded conversation.

61.     The Grosses are informed and believe that the Chapman's have obtained other recordings of the Grosses in violation of 18 U.S.C.A. § 2511.

62.     The Chapmans and/or individuals working in concert with them should not be permitted to continue the dissemination of these recordings to third parties and should be restrained from doing so pursuant to 18 U.S.C.A § 2520(b)(1). The Chapmans should be required to disclose the names of all persons who have obtained or were provided a copy of the recordings.

63.     The Grosses have no adequate remedy at law.

64.     Adam Chapman and Howard Chapman and any other individual or individuals acting in concert with them should be restrained and enjoined from disseminating or listening to the contents of any recorded conversations of Randy and Beth and should be restrained from any further violation of 18 U.S.C § 2511.  All copies of such recorded conversations in the possession of any person should be delivered to Randy and Beth Gross and thereafter immediately and permanently deleted from any devices on which the recordings are stored.

65.     Beth and Randy have more than a likelihood of success on the merits of their claims under the Federal Anti-Eavesdropping Statute.

## COUNT IV
### (Damages for Violation of the Illinois Anti-Eavesdropping Statute)

66.     Plaintiffs re-allege paragraphs 1 to 44 of the General Allegations of the Complaint as paragraph 66 of the Complaint.

67.     Under Illinois law eavesdropping is illegal and is a criminal offense.  The Illinois Eavesdropping Act specifically describes the elements of the offense under 720 ILCS § 14-2.  It provides that:

(a) A person commits eavesdropping when he or she knowingly and intentionally:

(1) Uses an eavesdropping device, in a surreptitious manner, for the purpose of overhearing, transmitting, or recording all or any part of any private conversation to which he or she is not a party unless he or she does so with the consent of all of the parties to the private conversation;

* * *

(4) Manufactures, assembles, distributes, or possesses any electronic, mechanical, eavesdropping, or other device knowing that or having reason to know that the design of the device renders it primarily useful for the purpose of the surreptitious overhearing, transmitting, or recording of private conversations or the interception, or transcription of private electronic communications and the intended or actual use of the device is contrary to the provisions of this Article; or

(5) Uses or discloses any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article, unless he or she does so with the consent of all of the parties.

68.     The 720 ILCS § 14-1 provides the following definitions:

(a) Eavesdropping device.

An eavesdropping device is any device capable of being used to hear or record oral conversation or intercept, or transcribe electronic communications whether such conversation or electronic communication is conducted in person, by telephone, or by any other means; Provided, however, that this definition shall not include devices used for the restoration of the deaf or hard-of-hearing to normal or partial hearing.

(b) Eavesdropper.

An eavesdropper is any person, including any law enforcement officer and any party to a private conversation, who operates or participates in the operation of any eavesdropping device contrary to the provisions of this Article or who acts as a principal, as defined in this Article.

(c) Principal.

A principal is any person who:

    (1) Knowingly employs another who illegally uses an eavesdropping device in the course of such employment; or

    (2) Knowingly derives any benefit or information from the illegal use of an eavesdropping device by another; or

    (3) Directs another to use an eavesdropping device illegally on his or her behalf.

(d) Private conversation.

    For the purposes of this Article, "private conversation" means any oral communication between 2 or more persons, whether in person or transmitted between the parties by wire or other means, when one or more of the parties intended the communication to be of a private nature under circumstances reasonably justifying that expectation. A reasonable expectation shall include any expectation recognized by law, including, but not limited to, an expectation derived from a privilege, immunity, or right established by common law, Supreme Court rule, or the Illinois or United States Constitution.

69.    The Illinois Anti Eavesdropping Act allows a private right of action by a person subjected to a violation of the Act.

70.    Adam and Howard committed a violation of the Illinois Eavesdropping Act by engaging in the following acts:

A.    They used an eavesdropping device in a surreptitious manner for the purpose of overhearing, transmitting and recording a private conversation to which they were not a party without the consent of all parties to the private conversation.

B.    They assembled and possessed an eavesdropping device for the purpose of surreptiously overhearing, transmitting, recording of private conversations and the intended use was contrary to the provisions of the Illinois Eavesdropping Act.

C.    They used and disclosed information which they knew or reasonably should have known was from a private conversation in violation of the Illinois Eavesdropping Act without the consent of all the parties to the conversation.

71.    Under 720 ILCS 5/14-6 it is expressly provided that:

13

(1) Any or all parties to any conversation or electronic communication upon which eavesdropping is practiced contrary to this Article shall be entitled to the following remedies:

    (a) To an injunction by the circuit court prohibiting further eavesdropping by the eavesdropper and by or on behalf of his principal, or either;

    (b) To all actual damages against the eavesdropper or his principal or both;

    (c) To any punitive damages which may be awarded by the court or by a jury;

72.    The Grosses are entitled to their actual damages suffered as a result of the conduct of Howard and Adam.

## COUNT V
### (Punitive Damages for Violation of the Illinois Anti-Eavesdropping Statute)

73.    Plaintiff reallege paragraphs 1 to 72 of Count IV as paragraph 73 of this Count V.

74.    Punitive damages are appropriate in this case.

75.    The actions of the Chapmans were intentional and for the purpose of harassing Beth and Randy.

76.    The violation of the plaintiffs was wanton, reckless and malicious.

77.    Punitive damages should be imposed for purposes of retribution and deterrence.

78.    Howard and Adam should be liable for punitive damages.

## COUNT VI
### (Injunction under the Illinois Anti-Eavesdropping Statute)

79.    Plaintiff reallege paragraphs 1 to 72 of Count IV as paragraph 79 of this Count VI.

80.    Under 720 ILCS 5/14-6 the court may enter injunctive relief.

81.    The Chapmans have disseminated the recorded conversation and have previously threatened to disseminate the contents of the recorded conversations. The Chapmans should be required to disclose the names of all persons who were provided or have obtained a copy of the recordings.

14

82.     The Grosses are informed and believe that the Chapman's have obtained other recordings of the Grosses in violation of the Illinois Anti Eavesdropping Act.

83.     Adam Chapman and Howard Chapman and any other individual or individuals acting in concert with them should be restrained and enjoined from disseminating or listening to the contents of any recorded conversations of Randy and Beth and should be restrained from any further violation of 720 ILCS 5/14-6.  All copies of such recorded conversations should be delivered to Randy and Beth Gross and thereafter immediately and permanently deleted from any devices on which the recordings are stored.

84.     The Grosses have no adequate remedy at law and are threatened with additional irreparable harm from Adam's and Howard's possession and dissemination of the recordings.

85.     Beth and Randy have more than a likelihood of success on the merits of their claims under the Illinois Anti Eavesdropping Act.

**COUNT VII**
**(Damages for Invasion of Privacy)**

86.     Plaintiffs reallege paragraphs 1 through 44 the General Allegations of the Complaint as paragraph 86 of Count VII.

87.     The actions of the Chapmans of eavesdropping as set forth above constitute an invasion of privacy.

88.     The eavesdropping constituted actions of prying into the private domain of the Grosses.

89.     The conduct was an unreasonable intrusion upon the seclusion of the Grosses.

90.     The actions of the Chapmans were intentional.

91.     The Chapmans conduct has intentionally interfered with the Grosses private affairs which is highly offensive to a reasonable person.

15

92.     The Grosses have been damaged as a result of the facts set forth above.

93.     The Grosses should be awarded punitive damages for Adam's and Howard's willful, wanton and outrageous conduct.

**COUNT VIII**
**(Damages for Intentional Infliction of Emotional Distress)**

94.     Plaintiffs reallege paragraph 1 to 44 and 88-94 of Count VII as paragraph 94 of Count VIII.

95.     The conduct of Howard and Adam was:

(A) truly extreme and outrageous;

(B) intended to inflict or knew there was a high probability that their conduct would inflict severe emotional distress upon the Grosses; and

(C) in fact caused the plaintiffs severe emotional distress.

96.     The conduct of Howard and Adam caused the Grosses embarrassment, mental anguish, and emotional trauma.

97.     The Grosses are entitled to recover damages that they have incurred for intentional infliction of emotional distress caused by Howard and Adam.

98.     The Grosses should be awarded punitive damages for Adam's and Howard's willful, wanton and outrageous conduct.

Wherefore, Randy Gross and Beth Gross pray that they be awarded the following relief:

A.  That a judgment be entered in their favor and against Howard Chapman and Adam Chapman under 18 U.S.C. § 2520 (b) and 18 U.S.C. 2520 (c)(3) in an amount to be determined.

B.  That a judgment be entered in their favor and against Howard Chapman and Adam Chapman for punitive damages under 18 U.S.C. 2520 (b) in an amount to be determined.

C.  That they are awarded a reasonable attorney fee and litigation costs in connection with this matter under 18 U.S.C. § 2520 (b).

D. That the court enter injunctive relief under 18 U.S.C. § 2520 (b) enjoining and restraining Howard Chapman and Adam Chapman and any other person or persons acting in active concert with them: (a) from any further violations of 18 U.S.C. § 2511; (b) from any further actions disseminating or listening to the contents of any recorded conversations of Randy Gross and Beth Gross; (c) directing Adam Chapman and Howard Chapman to deliver any and all copies of such conversations to Randy Gross and Beth Gross; (d) ordering any computer storage of such conversations be permanently deleted from any cloud devices and all devices in the custody, possession or control of Adam and Howard; (e) that Adam Chapman and Howard Chapman each be ordered to file a sworn affidavit with this Court attesting to the permanent deletion of all recorded conversations of Aliza, Randy and/or Beth: and (f) the names of any person who may be in possession of any of the recordings.

E. That a judgment be entered in their favor and against Howard Chapman and Adam Chapman under 720 ILCS § 5-14-6 for damages suffered.

F. That a judgment be entered in their favor and against Howard Chapman and Adam Chapman for punitive damages under 720 ILCS § 5/14-6 in an amount to be determined.

G. That the court enter injunctive relief under 720 ILCS § 5/14-6 enjoining the restraining Howard Chapman and Adam Chapman and any other person or persons acting in active concert with them: (a) from any further violations of 720 ILCS § 5-14-6 *et seq*; (b) from any further actions disseminating or listening to the contents of any recorded conversations of Randy Gross and Beth Gross; (c) directing Adam Chapman and Howard Chapman to deliver any and all copies of such conversations to Randy Gross and Beth Gross; (d) ordering any computer storage of such conversations be permanently deleted from any cloud device and all devices in the custody, possession or control of Adam and Howard; (e) that Adam Chapman and Howard Chapman each be ordered to file a sworn affidavit with this Court attesting to the permanent deletion of all recorded conversations of Aliza, Randy and/or Beth: the names of any person who may be in possession of any of the recordings.

H. That a judgment be entered in their favor and against Howard Chapman and Adam Chapman for the violation of their right to privacy under Count VII in an amount to be determined.

I. That a judgment be entered in their favor and against Howard Chapman and Adam Chapman for their intentional infliction of emotional distress under Count VIII in an amount to be determined.

J. For such other and further relief as the Court may find is equitable and just.

DATED: April___, 2019

RANDY GROSS and BETH GROSS

By:____/s/Lawrence C. Rubin_____
   One of Their Attorneys

Lawrence C. Rubin (#2413426)
Cary E. Donham (#6199385)
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
Telephone: 312-527-4000
Facsimile: 312-527-3122
lrubin@taftlaw.com
cdonham@taftlaw.com
Firm No: 29143
24281542.8