IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALIZA GROSS, RANDY GROSS and BETH GROSS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:19-cv-02743 |
| HOWARD CHAPMAN, ADAM CHAPMAN, and DALE CHAPMAN, | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' REPLY IN RESPONSE TO PLAINTIFFS' OPPOSITION TO AND IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS COUNTS VII AND VIII OF PLAINTIFFS' FIRST CONSOLIDATED AMENDED COMPLAINT**

**INTRODUCTION**

For Plaintiffs' Response, two thirds of it merely restates allegations of the First Consolidated Amended Complaint ("Complaint"). The balance provides no law that could allow one to conclude that the largely conclusory allegations of the Complaint meet the legal requirements for stating claims on which relief could be granted in either Counts VII or VIII. Nor do Plaintiffs challenge any of the decided law Defendants cite in their Motion to Dismiss, all of which unequivocally shows that Plaintiffs' allegations in both counts are legally inadequate. In short, Plaintiffs' allegations fail to state their tort claims, respectfully, because no such facts exist. Counts VII and VIII should be dismissed and, given that this is the fourth complaint of Plaintiffs, the dismissal should be with prejudice.

**COMPLAINT ALLEGATIONS**

Defendants provided the allegations of Counts VII and VIII in their Motion to Dismiss and, as such, is not restating them again here. There is no debate that the fact allegations in the Complaint (provided they are not conclusory) are taken as true when considering a motion to

1

dismiss. However, in their argument, Plaintiffs submit as allegations statements that are found nowhere in the Complaint. While those statements would not have cured the legal deficiencies of Counts VII or VIII even if they had been pled in the Complaint, these statements are not allegations of the Complaint and must be disregarded in considering the Motion to Dismiss.[1]

## ARGUMENT

**A.   As a Matter of Law, Plaintiffs Do Not State a Claim For Intrusion Against Any Defendant and Submit no Law or Facts to Support That They Have**

Plaintiffs claim that "Defendants concede that the Plaintiffs have alleged elements 1, 2 and 4 (of Intrusion) and argue only that the Plaintiffs have failed to allege private facts." (Response at 9-10) Plaintiffs are incorrect. Defendants did not address the other three required elements of Intrusion because the third element, "private facts," is the core of the tort and "[i]f a plaintiff does not allege private facts, then the other three elements of the tort need not be reached." *Acosta v. Scott Labor LLC*, 377 F. Supp. 2d 647, 650 (N.D. Ill. 2005). This third element of private facts is the "predicate for the other three." *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. Ct. 1st Dist. 2004)("Without private facts, the other three elements of the tort need not be reached.").

**1.   Private Facts Sufficient to Support a Claim of Intrusion Have Not Been Pled**

The Complaint contains no actionable "private facts" as that term is used in case law. It is not sufficient that the facts allegedly "intruded upon" are personal. For facts to be actionable Intrusion, they must be regarding "a person's financial, medical, or sexual life, or a peculiarly private fact of an intimate[,] personal nature." *Acosta*, 377 F. Supp. at 650. Money, health, and sex are a far cry from the "facts" Plaintiffs plead. An upcoming wedding ceremony or Beth and Randy's "frustration and disappointment with the environment created by (alleged) threats and

---

[1]   A chart of the asserted allegations not in the Complaint are on the chart attached as Exhibit 1.

2

coercive behavior" of Defendants (Complaint ¶¶ 27, 39) have nothing to do with Plaintiffs' respective confidential health, sexual life, or financial well-being or troubles.  As such, their claim of Intrusion fails without regard to any of the other elements.

Citing to the phrase "family issues" used in *Johnson v. Kmart Corp.,* 311 Ill. App. 3d 573,578 (Ill. App. Ct. 1st Dist. 2000), Plaintiffs argue that disputes over a wedding ceremony and Beth and Randy's "feelings" about the Chapmans are "family issues" sufficient to be an actionable private fact. (Response at 9-11)  They are wrong.  What Plaintiffs fail to disclose to this Court is that the "family issues" in *Johnson* were that family's criminal conduct, incidents of domestic violence, and undisclosed impending divorces.  It is disingenuous for Plaintiffs to even suggest that an argument or irritation about the Chapmans regarding a wedding ceremony can rise to the same level as one family's deeply personal secrets of criminal behavior/domestic violence or an undisclosed decision to divorce.

Nor do the "private facts" of the other cases cited by Plaintiffs in their Response (pg. 11) have anything in common with the subject matter Plaintiffs allege were intruded upon. Each case cited is inapposite; the facts in each of the cited cases were regarding a plaintiff's drug use, criminal activity, or health or financial condition.  In *Burrow v. Sybaris Int'l, Inc.,* No. 13 C 2342, 2013 WL 5967333, *1 (N.D. Ill. 2013) the conversations reported involved "discussion of intimate, personal, or confidential information" regarding their specific desires to stay at a "romantic paradise."  Sybaris markets itself as follows: "A magical place where couples could shed the stress of daily life and re-acquaint themselves with love. An oasis of privacy- - no windows, no phones. A special place dedicated to the enhancement of romantic marriage."[2]   In *In re Marriage of Tiggs*, 750 N.W. 2d 824, 830 (Iowa 2008) there were hidden cameras in a

---

[2] *See* https://www.sybaris.com/the-sybaris-story/; *see also* "Romantic or raunchy: A sexy slide into Sybaris", *On Milwaukee,* https://onmilwaukee.com/living/articles/sybarispoolsuites.html.

bedroom to learn about the sexual activity of the plaintiff. *Burns v. Mastermind Cabinets, Inc.,* 369 Ill. App. 3d 1006 (Ill. App. Ct. 4th Dist. 2007) involved the plaintiff's physical health and degree of his claimed physical injuries. The private facts in *Loughnane v. Zukowski, Rogers, Flood & McArdle*, No. 19 C 0086, 2019 WL 4242486, *1, *6-*7 (N.D. Ill. 2019) were the plaintiff's finances and health. *Narducci v. Village of Bellwood,* 444 F. Supp. 2d 924, 938 (N.D. Ill. 2006) involved the plaintiff's drug use and theft. Nowhere in the Complaint do Plaintiffs allege that they discussed their own drug use, sex lives, health or finances in the Recorded Conversation.

> **2. Plaintiffs Fail to Allege They Attempted to Keep Private Matters Discussed on the Recorded Conversation As Is Required For Intrusion**

Additionally, nowhere in the Complaint is there any allegations that any of the Plaintiffs "attempted to keep private" their dispute over the proposed wedding ceremony or how Randy and Beth felt about the Chapman. Yet, the law is clear that for the tort of Intrusion to be pled, the plaintiff must allege that he/she "attempted to keep private facts private." *Acosta*, 377 F. Supp. at 650. Plaintiffs cite no law to counter this requirement.

To avoid the obvious—that the Recorded Conversation contained no actionable private facts or that Plaintiffs even attempted to keep what they did discuss private —Plaintiffs appear to suggest that because they have alleged "eavesdropping," nothing more needed be pled to state a claim for Intrusion. (Response at 9) Although courts and the Restatement have noted that tapping phone wires, *see Narducci*, 444 F. Supp. 2d at 938 and Restatement II of Torts § 652B cited by Plaintiff, may be "intrusion," neither the Restatement nor any case cited by Plaintiffs holds that alleging eavesdropping obviates the need to allege and prove all of the required elements of Intrusion to obtain relief. Illinois law is to the contrary. It makes it clear that the test

4

articulated by the *Spiegel* court contains four required elements for Intrusion; intrusion, alone, is insufficient to state a claim. *See Busse*, 813 N.E.2d at 1017.

> 3. **No Allegations Can Support a Claim of Intrusion Against Howard or Dale Chapman**

While the lack of alleged legally actionable "private facts" dooms Count VII in toto, it is also clear that there are no allegations of intrusion upon Beth and Randy by any of the Defendants and no intrusion upon Aliza by Howard or Dale.[3] "Intrusion" requires an entering into another's space without permission. *See* Black's Law Dictionary (11th ed. 2019). There are no allegations that any of the Defendants entered into Randy and Beth's home or where they were located when they spoke to Aliza. To the contrary, as Plaintiffs submit in the Complaint, Beth and Randy were not in the Residence at the time of the Recorded Conversation. Further, neither Beth nor Randy's voices could have or would have been picked up by the Nest Security System **but for** Aliza broadcasting her parent's voices into the Residence by placing her call to them on her speakerphone.

Nor are any of the allegations of intrusion upon any of the Plaintiffs by either Dale or Howard. (Complaint ¶¶ 17, 20, 25-26, 34, 36, 47) None of the allegations against Dale – that she "conspired"[4] to record, listened to the Recorded Conversation, or "attempt[ed]" to use the Recorded Conversation, or against Howard – that he "assisted" Adam with the installation of the Google Nest Security Camera in the Residence, listened to the Recorded Conversation and

---

[3] While Aliza was residing at the Residence where the Security Cameras were located, she arguably has alleged "invasion" in the space where she was located. Not being located in the Residence, Beth and Randy clearly cannot so argue.

[4] As a matter of law, there is no secondary eavesdropping through conspiracy. *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003).

5

"threatened" to reveal it to others – are allegations of the act of entering into any of the locations where Plaintiffs were.

**B.  As a Matter of Law, Plaintiffs Fail To Plead IIED Against Any of the Defendants and Submit No Law That Could Support a Contrary Conclusion**

**1.  The Complaint Allegations Fail to Satisfy the Three Required Elements of IIED**

Plaintiffs' response regarding Count VIII IIED claim is brief—one-and-a-half pages. (Response at 12-13)  No law is cited to counter the plethora of cases Defendants provided that clearly show that the facts pled as a matter of law do not state a claim of IIED.  Nor do Plaintiffs submit any argument to support that they did allege IIED as to Howard or Dale Chapman or that Beth or Randy Gross hold such a claim against any of the Defendants, including Adam Chapman.

Instead, citing two cases, Plaintiffs restate that whether conduct is extreme and outrageous is determined by the specific facts of a particular case.  Defendants do not disagree. But the facts of this particular case do not support, by any stretch, that the actions alleged are legally "beyond the bounds of human decency and [be] considered intolerable in a civilized community."  *Lewis v. Sch. Dist. No. 70*, 523 F.3d 730, 747 (7th Cir. 2008).

Illinois court have already ruled that the actions alleged by Plaintiffs of Defendants— insults, threats to disclose the Recorded Conversation to cause embarrassment, and annoyances are *not* extreme or outrageous actions.  *See McGrath*, 533 N.E.2d at 809.  Nor is eavesdropping, recording and hearing conversations, the gist of Plaintiffs' Complaint, even when done by an employer who is in a position of real power and authority over another, enough to be "extreme and outrageous" to sustain an IIED claim.  *See Carroll v. Lynch*, No. 07 C 1575, 2011 WL 1838563, at *1 (N.D. Ill. May 13, 2011) and *Harriston v. Chicago Tribune*, 992 F.2d 697, 703 (7th Cir. 1993).  Plaintiffs submit no argument or law to the contrary.

The distress claimed by Plaintiffs as a result of Defendants' alleged actions is not legally considered "extreme." First, mental anguish, emotional trauma and emotional distress pled are conclusory formulaic recitations of the elements of the claim and cannot be considered. *See Iqbal*, 556 U.S. at 678. Second, to be extreme stress must be "so severe that no reasonable man could be expected to endure it." *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976). At most, Plaintiffs allege the type of "grief, shame, and humiliation" that Illinois courts have roundly rejected as severe emotional distress. *See, e.g.*, *Adams v. Sussman & Hertzberg, Ltd.*, 684 N.E.2d 935,942 (Ill. App. Ct. 1st Dist. 1997). As to Aliza, "trials of everyday life between two cohabiting people" is insufficient to state an IIED claim without recurring cycles of physical and verbal abuse, none of which is pled in the Complaint. *See Feltmeier v. Feltmeier*, 798 N.E.2d 75, 83 (Ill. 2003). Again, Plaintiffs submit no argument or law to the contrary.

Finally, IIED does not exist without alleging and proving that the alleged actions of a defendant were intended by the defendant to cause severe emotional distress. *See Stanford v. Garcia*, No. 07 C 6358, 2009 WL 901131, *4 (N.D. Ill. Mar. 31, 2009). No such allegations are in the Complaint and, again, Plaintiffs submit no argument or law to the contrary.

2.   **Plaintiffs' Sole Argument Regarding IIED Is Unsupported By Decided Law**

In their Response, Plaintiffs do cite *McGrath* for the proposition that successful IIED claims frequently involve defendants in a position of authority relative to the plaintiff. *Id*. at 12. What *McGrath* actually held was that "[t]he more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment." 533 N.E.2d at 509. From that, Plaintiffs argue that they have stated an

IIED claim on behalf of Aliza against Adam because Adam was "in a position of authority with Aliza."[5] (Response at 12)

Nowhere in the Complaint are any facts pled (or even a conclusory statement) that Adam dominated, controlled or had power or authority over Aliza. Instead, Plaintiffs argue that because Adam and Aliza lived together and were to be married, this put "Adam [was] in a position of authority with Aliza" such that Adam's "*attempt*[] to exercise domination and control" over Aliza by manipulation and continual criticism of her made his actions "extreme and outrageous." (Response at 12) Plaintiffs' argument is absurd. Plaintiffs ask this Court to conclude that any co-habitation arrangement, a women who is criticized is subject to the man's dominance, control and authority.

Illinois case law cited above shows that even being an employer that has actual authority over an employee is insufficient for an IIED claim. Illinois cases finding that defendant's position of authority over a plaintiff have no similarities with the allegations of the Complaint. In *Milton v. Illinois Bell Telephone Co*., 427 N.E.2d 829 (Ill. 1981), an employee claimed that, to coerce him into falsifying work reports, his superiors engaged in an extensive course of harassing and discriminatory conduct (which plaintiff set forth in much detail). In allowing the complaint to stand, the court emphasized that "[i]t is the alleged abuse of power by a large corporation over one of its front line employees which aggravates the outrageousness of the conduct alleged in this case." 427 N.E.2d at 832

Likewise, in *Eckenrode v. Life of America Insurance Co*., 470 F.2d 1, 4-5 (7th Cir. 1972), defendant insurance company allegedly attempted to coerce a widow into compromising a claim under her husband's life insurance policy through a multitude of abusive tactics including

---

[5] This argument is not made with respect to Howard or Dale having authority over any of the Plaintiffs or that Adam held such a position with respect to Beth or Randy.

9

conduct which the court found amounted to economic coercion sufficient to sustain an IIED claim. These situations are in diametric opposition to the relationship between Aliza and Adam, in which neither individual was an employee or in physically or mentally compromised/ weakened position.

C.      **Counts VII and VII Should Be Dismissal With Prejudice.**

The Complaint is Plaintiffs' fourth attempt to state claims for intrusion upon seclusion ("Intrusion") and intentional infliction of emotional distress ("IIED") and they have failed to do so. This case was commenced with a case filed by Randy and Beth Gross against Adam and Howard Chapman. Adam and Howard Chapman filed a motion to dismiss the Intrusion and IIED claims as they failed to state claims on which relief could be obtained. [Dkt. #15-17]. Instead of responding to the motion, Beth and Randy Gross filed an amended complaint which repeating the same deficient allegations that were made in the initial complaint. [Dkt. #18]

At the same time, Aliza Gross, Randy and Beth's daughter, started a new case by filing a substantially identical complaint to her parents against Adam, Howard and Dale Chapman. Aliza's complaint contained the same legally deficient allegations of Intrusion and IIED as her parents' complaint. [Dkt. #1: 19-cv-04300] Defendants filed a motion to reassign Aliza's case to the Judge of this case before the time to answer Aliza's complaint arose. [Dkt. #23]. That motion was granted and this Court ordered all Plaintiffs to file one consolidated complaint against all defendants. [Dkt. #28]. Plaintiffs then filed the Complaint which is now before this Court. [Dkt. #29]. And, for the fourth time, the Complaint merely repeats the same inadequate allegations of the prior three complaints.

Plaintiffs have been given three opportunities to plead Intrusion and IIED claims that satisfy all of the legal requirements for those actions and have failed to do so. Given this

procedural record, this Court can readily conclude that facts do not exist to make such claims allowing the Court to dismiss the Complaint with prejudice. *See Ahmed v. Pickwick Place Owners' Ass'n*, 385 Ill.App.3d 874, 882 (denying the plaintiff's requests for leave to amend where he had prior opportunity to amend); *Weidner v. Midcon Corp.*, 328 Ill.App.3d 1056, 1061 (2002) (finding the allowance of additional amendments would not further the ends of justice where the plaintiff had prior opportunity to amend); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) (affirming dismissal with prejudice where plaintiff failed to remedy deficiency in prior amendments); *James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 401 (7th Cir. 2006) (affirming district court's dismissal with prejudice because "the interests of justice" did not require additional amendments if complaint "would suffer the same fatal flaws as the one before it").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an Order granting their motion and dismissing Counts VII and VIII of Plaintiffs' First Consolidated Amended Complaint with prejudice.

Dated:  October 16, 2019

HOWARD CHAPMAN, DALE CHAPMAN, and ADAM CHAPMAN,

By:  */s/ Paula K. Jacobi*
      One of their Attorneys

Paul Olszowka (ARDC No. 6291267)
Paula K. Jacobi (ARDC No. 1311247)
Brandon B. Bridges (ARDC No. 3212414)
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606-2833

(312) 357-1313
paul.olszowka@btlaw.com
paul.jacobi@btlaw.com
brandon.bridges@btlaw.com

| EXHIBIT 1 |  |
|---|---|
| Allegations in Brief Argument Section But Not in Complaint | |
| Brief, p. 10:<br><br>The Recorded Conversation thus involved family problems, future marriage and post-wedding issues… | Not in Complaint.<br><br>Compl. ¶ 27: Plaintiffs talked freely and openly during their private conversation regarding the wedding and expressed their frustrations and disappointment with the hostile and divisive environment created by the threats and coercive behavior exhibited by Adam, his parents and sister Ashley. |
| Brief, p. 10:<br><br>Moreover, Adam recognized that Aliza's phone call with her parents would be private, because he placed the burden on Aliza to call her parents. | Not in Complaint.<br><br>¶ 23: Aliza advised Adam that she would immediately call her parents. |
| Brief, p. 12:<br><br>Adam was in a position of authority with Aliza. | Not in Complaint.<br><br>Compl. ¶ 20: Adam *attempted* to exercise domination and control *over* the entirety of *his relationship* with Aliza. (emphasis added) |
| Brief, p. 12:<br><br>Adam took steps to dominate and control Aliza. | Not in Complaint.<br><br>Compl. ¶ 20: Adam *attempted* to exercise domination and control *over* the entirety of *his relationship* with Aliza. (emphasis added) |
| Brief, p. 12:<br><br>Adam made Aliza dependent on him. | Not in Complaint<br><br>¶ 20: This was *intended* to create self-doubt and dependency. (emphasis added) |

**CERTIFICATE OF SERVICE**

The undersigned hereby states that a copy of the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COUNTS VII AND VIII OF PLAINTIFFS' FIRST CONSOLIDATED AMENDED COMPLAINT** was served on the following counsel of record this 16th day of October, 2019, by operation of the Court's ECF system:

Lawrence C. Rubin
Cary E. Dunham
Taft Stettinus & Hollister LLP
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601

/s/ *Paula K. Jacobi*