# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALIZA GROSS, RANDY GROSS and BETH GROSS, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 1:19-cv-02743 ) |
| HOWARD CHAPMAN, ADAM CHAPMAN, and DALE CHAPMAN, | ) ) ) ) |
| Defendants. | ) |

**BRIEF OF DEFENDANTS (1) IN OPPOSITION TO PLAINTIFFS' MOTION TO SERVE PROPOSED ADDITIONAL INTERROGATORIES REGARDING ESI DISCOVERY AND (2) IN SUPPORT OF MOTION FOR PROTECTIVE ORDER TO BAR FURTHER ESI DISCOVERY**

Pursuant to the Court's Order dated June 23, 2020, Defendants respectfully submit the following in opposition to Plaintiffs' Motion for Leave to Serve Additional Interrogatories. [ECF No. 74] This brief is also submitted in support of Defendants' related motion for a Protective Order pursuant to Fed. R. Civ. R. 26(c) to bar Plaintiffs from seeking further discovery into Defendants' ESI Production.

**PRELIMINARY STATEMENT**

This lawsuit arises out of the broken engagement between Plaintiff Aliza Gross and Defendant Adam Chapman. The dates surrounding their engagement, their relationship, and the ending of their relationship are very important to an understanding of the instant motions relating to ESI discovery.

The couple became engaged on February 24, 2018 and on June 29, 2018, Adam decided to call it off. The couple had been living together at Adam's home and, after the relationship was over, on July 1, 2018, Aliza moved her belongings out. Ten days later, an attorney for Plaintiffs

(who had been drafting a pre-nuptial agreement for Aliza which she had demanded) sent Adam a demand letter seeking approximately $250,000 for alleged wedding deposits that allegedly could not be returned.

When that demand was not met, Plaintiffs initiated this case. Having been able to recover many of the deposits initially demanded from Adam, Plaintiffs' current itemized compensatory damages are claimed to be $116,919.

Defendants have made three productions of ESI (text messages and emails). First, Defendants include some ESI with their Rule 26 disclosures. Next, in response to Plaintiffs' Document Requests, Defendants produced ESI for the period of February 24 to July 1, 2018. This range started with Aliza and Adam became engaged until she moved out after the break up. Finally, to resolve Plaintiffs' assertions that the February 24 to July 1 production was deficient, after substantial negotiations, the Parties reached agreement on the process by which Defendants would conduct a further search for ESI sent and received by Defendants over an expanded time frame (January 1, 2018 to September 30, 2018) by using certain terms and date restrictions.

This agreement struck a balance between (a) Plaintiffs' desire to obtain evidence that they believed existed and would be probative of their claims, and (b) the costs of conducting this search, including the expense of an eDiscovery vendor and the attorney time to review the results for responsive documents. Before reaching this agreement, Defendants had already paid their vendor over $3,600. Since then, Defendants have incurred over $12,400 in additional vendor costs in compliance with the agreement with Plaintiffs.

Defendants have kept their side of the bargain. Undersigned counsel supervised the process and directed Defendants' vendor (the 4Discovery firm) to gather the ESI from Defendants' email and cell phone accounts, apply the search terms to this ESI, and the provide culled ESI results to

undersigned counsel, who then reviewed the culled ESI, and provided the responsive texts and emails to Plaintiffs.

Apparently, the texts Defendants produced do not show what Plaintiffs hoped they would. So now, they seek leave to take discovery about how Defendants conducted their discovery –what is sometimes called "discovery on discovery," "collateral discovery," or "meta discovery." Plaintiffs want to start with three interrogatories and have stated that they will then depose 4Discovery to "determine whether the instructions and process the vendor used are consistent with appropriate discovery practices." [ECF No. 74 at ¶ 6]

As seen in the Sedona Principles, courts and commentators agree that such a "discovery on discovery" request should be allowed only in rare instances should not even be considered without

> specific, tangible, evidence-based indicia (***versus general allegations of deficiencies or mere 'speculation'***) of a material failure by the responding party to meet its obligations.

*See* The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 SEDONA CONF. J. 1, 123 cmt. 6.b.(2018) (emphasis added). *See also Hubbard v. Potter,* 247 F.R.D. 27, 29 (D.D.C. 2008)("Speculation that there is more will not suffice."). If courts do not enforce a high standard, discovery would never end. *See Freedman v. Weatherford International* Ltd., No 12 Civ. 2121, 2014 WL 4547039, at *2 (S.D.N.Y. Sept. 12, 2014) ("[R]equests for such 'meta-discovery' should be closely scrutinized in light of the danger of extending the already costly and time-consuming discovery process ad infinitum.").

Plaintiffs have not met this high standard. They claim that "the production appears suspect." [ECF No. 74 at ¶ 5] Yet, the sole factual support is that Defendants' third ESI production

had only twenty-eight text messages. [ECF No. 75 at ¶ 4] [1] Apparently, they think that this count is too low when compared with the amount of texts contained in Defendants' prior production, which had hundreds.

But these different counts are not the result of any error or withholding of responsive documents. The simple fact is that there was not a large volume of responsive texts because the expanded search covered a period *after* Adam broke off his engagement to Aliza. She was out of his and his parents' life. There was no reason for him or his parents to talk about her or any of the other Plaintiffs.

Defendants should not be required to incur any further expenses because Plaintiffs have an unsubstantiated hunch that something was missed. It wasn't. The ESI production is complete and done according to agreement with Plaintiffs. Plaintiffs' motion to serve the interrogatories should be denied and the Court should bar Plaintiffs from seeking any further discovery on discovery.

## FACTUAL BACKGROUND

**Defendants' Production of ESI in Response to Defendants Document Requests**. As noted, the production that Plaintiffs say is "suspect" is actually Defendants' second production of ESI in response to their Document Requests and third production of ESI overall. Their two Document Requests that call for ESI are Nos. 1 and 5.[2]

---

[1] Actually, the number of texts produced was in excess of 70–not 28. [Declaration of Paula K. Jacobi ("Jacobi Decl."), dated July 7, 2020, at ¶17]

[2] These Requests state

> 1. All documents in the custody, possession or control of Howard, Adam or Dale identified or listed in Defendants and/or Plaintiffs' Mandatory Initial Disclosures.
>
> 5. All documents stored on Howard or Adam Chapman's computers at H. Kramer & Company, or on any H. Kramer & Company server, including but not limited to recordings or emails, that relate to Aliza, Beth or Randy Gross.

On December 4, 2019 and December 26, 2019, Defendants responded to Requests Nos. 1 and 5 by producing texts and emails between and among themselves and between them and Plaintiff Aliza Gross during the period from February 24, 2018 through July 1, 2018. This date range marked the date of the engagement until just after Adam decided to end the relationship. As measured in pages, this production was almost 1,000 pages in volume. [Jacobi Decl. ¶¶ 6-7] In making this production, Defendants paid their vendor at total of $3,645 and incurred over $5,500 in professional fees. [*Id*. ¶ 8.]

**Plaintiffs Contend That the ESI Document Production Is Incomplete, the Parties Meet and Confer, and Then Reach a Compromise**. Plaintiffs believed that this production was deficient. They claimed that the date range was too narrow, the scope of the search of Defendants' cell phones was too narrow, and that additional work email addresses should have been searched. The parties met and conferred.

To try to resolve the dispute, Defendants proposed to collect additional ESI and perform searches based upon certain search terms. In a letter dated January 13, 2019, Defendants set forth the parameters in painstaking detail, as follows:

> *Scope and methodology of search*. We will direct 4Discovery to perform a key word search of text messages and emails that may be found in the following accounts and devices as identified in Defendants' Interrogatory Responses:
>
> hchapman222@yahoo.com
> (for missing period of July to September, 20, 2018
> akchapman5@gmail.com
> chpmana@hkramer.com
> hchapman222@yahoo.com
> chapmanh@hkramer.com
>
> Mobile phone 847-902-1074 (Adam Chapman)

---

Defendants have objected to these Requests on various grounds. Although Defendants reserve these objections, the agreement between the parties described above was intended to resolve all disputes between the parties relating to Defendants' production of ESI.

      Mobile phone 847-220-2608 (Howard Chapman)
      Mobile phone 847-602-3774 (Dale Chapman)

*Search terms*. The search on the above devices will employ the following search terms to identify potentially responsive documents:

      Aliza
      Randy
      Beth
      Engagement
      Wedding
      Leora
      Ashley
      Record*
      Google nest

These are the terms (in reverse) that you self-selected to search in the production you made to us. We do not include Heller/Ryan (as you request) because he works at H. Kramer and this will pull thousands of emails/text that have nothing to do with this case and given proportionality, the cost of attorney fee to review is too disproportionate to include.

*Timeframe*. January 1, 2018 through September 30, 2018.

*Format of production*. We will produce the documents in a format compatible with Relativity.

[Letter from P. Jacobi to C. Donham, dated January 13, 2020, Jacobi Decl. Ex. 1] On January 27, 2020, Plaintiffs agreed to this proposal. [Id., Ex. 2][3]

**The Parties Amend Their Agreement**. Following the resolution of the dispute, Defendants again went to work on collecting, reviewing, and producing ESI. Defendants had 4Discovery collect the additional ESI from Defendants' email and Iphones. 4Discovery then culled that ESI using the agreed-upon search terms and provided those results to undersigned counsel.

---

[3] As seen in this excerpt, months ago, Defendants provided Plaintiffs with the name of their ESI vendor—4Discovery, knew what instructions for further gathering of ESI was given and the terms searched. Given that, it is unknown why Plaintiffs even desire to serve interrogatories to elicit this information. [*See* ECF 74-1]

Counsel then reviewed the results to determine which were actually responsive to Defendants' document requests which the proper practice prior to production. [Jacobi Decl. ¶ 13] [4]

In the course of performing this review, undersigned counsel determined that the search terms were not effective, at least in part. The first issue encountered was searching the term "record*. That term was in metadata of emails and that term was getting hits on the word "record" which was appearing in hundreds of irrelevant business-related emails. As such, counsel for Defendants conferred with counsel for Plaintiffs and it was agreed to change the search term "record" to "recording." [*Id.* ¶¶ 13-14]

The second issue was with the terms "Randy" (as in Plaintiff Randy Gross). This terms were getting hundreds of hits because "Randy Weil" worked at the same company as did Adam and Howard. Thus, the term "Randy" was pulling up emails exchanged with Randy Weil that are wholly unrelated to this case. Accordingly, undersigned counsel again contacted counsel for Plaintiffs, explained the issue, and the parties agreed to eliminate "Randy" from the search terms. [*Id.*]

**Defendants Complete Their Search, Review, and Make Their Second Production.** Due to the impact of COVID-19, and certain personal matters, undersigned counsel's review of the search term-culled ESI was delayed. On June 1, 2020, Defendants began a rolling production of the responsive ESI identified pursuant to the terms of the Parties' amended agreement. In total, Defendants produced an additional 421 pages of emails and six reports containing 79 additional

---

[4] *See Bombardier Recreational Products, Inc. v. Arctic Cat, Inc.*, No. 12-cv-2706, 2014 WL 10714011, at *14 (D. Minn. Dec. 5, 2014) ("Rules 26 and 34 of the Federal Rules of Civil Procedure provide for the screening of ESI/documents for *responsiveness* prior to production; not only do the Rules permit parties to screen ESI and documents for relevancy prior to production, but the law encourages relevancy screening in an effort to avoid large, largely nonresponsive document dumps meant to obscure and cloak relevant documents.").

text messages. [Jacobi Decl. ¶¶ 16-17] For this additional work – collecting ESI from phones and computers and performing searches, Defendants incurred another $12,434 in vendor costs, bringing their total vendor costs to over $16,000. [Jacobi Decl. ¶ 18]

## ARGUMENT

A. **The Standard for Discovery on Discovery**

"'Federal courts will not compel a party to disclose its discovery process as a result of the opponent's mere suspicion that the party's process has not produced adequate documents.'" *Alley v. MTD Prod., Inc.*, No. 3:17-CV-3, 2018 WL 4689112, at *2 (W.D. Pa. Sept. 28, 2018) (quoting *Brand Energy & Infrastructure Servs. v. Irex Corp.*, No. 16-2499, 2018 WL 806341, at *6 (E.D. Pa. Feb. 7, 2018) (internal quotation marks omitted)).

Where a party seeks discovery about the other party's discovery process, the party seeking such discovery (here, Plaintiffs) must provide "an 'adequate factual basis' to justify the discovery, and the court must closely scrutinize the request 'in light of the danger of extending the already costly and time-consuming discovery process ad infinitum.'" *Winfield v. City of New York*, No. 15-cv-05236 (LTS) (KHP), 2018 WL 840085, at *3 (S.D.N.Y. Feb. 12, 2018). *See also Inter–Med, Inc. v. ASI Medical, Inc.*, No. 09–CV–383, 2010 WL 2854288, at *2 (E.D. Wis. July 18, 2010) ("The defendant cannot produce documents which do not exist. Mere '[s]peculation that there is more will not suffice.'") (quoting *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C.2008)).

B. **Plaintiffs Have Not Met Their Burden**

Plaintiffs have not come close to meeting this standard. In their bare bones motion, they refer to the fact that Defendants produced twenty eight text messages in their most recent production. But these are not the only text messages that Defendants have produced.

The actual amount of text messages produced was far larger than Plaintiffs assert. However, the reason why there are (comparatively) fewer text messages in Defendants' third production compared to the number of texts produced earlier is that the date ranges are different. The recent production covered the new requested time period starting weeks *after* Adam ended his engagement to Aliza and Aliza had moved out of Adam's home. That is why there are so few texts with the search terms of "Aliza" or "wedding" or "engagement." Adam (and his family) had moved on. Whatever Plaintiffs' suspicion, Defendants cannot produce documents that do not exist. And speculation, as a matter of law, is not grounds on which "discovery on discovery" is allowed.

Given that Plaintiffs have offered no other basis to conduct their requested discovery on discovery, their motion to serve additional interrogatories should be denied, as should any request to take depositions of Defendants' vendor. The Court can declare with confidence that Defendants have satisfied the terms of the Parties' agreement.

## C. More ESI Related Discovery Will Not Be Proportional

Pursuant to Rule 26(b)(2)(C)(iii) and Rule 26(b), both the Court and counsel should consider whether any requested discovery "is reasonably proportional to the value of the requested information, the needs of the case, and the parties' resources." The Sedona Conference, The Sedona Conference Commentary on Proportionality in Electronic Discovery, 11 SEDONA CONF. J. 289, 296–97 (2010).

As noted above, Defendants have incurred costs of over $16,000 searching for ESI requested by Plaintiffs. This sum *does not* include the attorney's fees incurred to identify relevant and responsive documents. If these professional fees are added, Defendants have incurred costs of over $34,900 collecting and producing ESI to Defendants. [Jacobi Decl. ¶ 19] Alternatively, and additionally, the Court should deny Plaintiffs requests for any further discovery on discovery

because the costs this additional discovery cannot be considered proportional to the stakes at issue in this dispute. Plaintiffs' itemized damages are $116,919. Defendants have already about 30% of this amount producing ESI to Plaintiffs. Allowing them to seek further ESI-related discovery based on a hunch (and this forcing Defendants to spend more money) cannot be considered proportional to the needs of this case in any sense of the word.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' motion and grant Defendants' motion.

Dated: July 7, 2020

HOWARD CHAPMAN, DALE CHAPMAN, and ADAM CHAPMAN,

By:    */s/ Paula K. Jacobi*
      One of their Attorneys

Paul Olszowka (ARDC No. 6291267)
Paula K. Jacobi (ARDC No. 1311247)
Brandon B. Bridges (ARDC No. 6312414)
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606-2833
(312) 357-1313
paul.olszowka@btlaw.com
paul.jacobi@btlaw.com
brandon.bridges@btlaw.com

**CERTIFICATE OF SERVICE**

      The undersigned hereby states that a copy of the foregoing Brief in Opposition to Motion to Serve Additional Interrogatories and in Support of Motion for Protective Order was served on the following counsel of record this 7th day of July, 2020, by operation of the Court's ECF system:

Lawrence C. Rubin<br>
Cary E. Dunham<br>
Taft Stettinus & Hollister LLP<br>
111 E. Wacker Drive, Suite 2800<br>
Chicago, Illinois 60601

                                                    /s/ *Paula K. Jacobi*