**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ALIZA GROSS, RANDY GROSS,** | ) | |
| **and BETH GROSS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 19 C 2743** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **HOWARD CHAPMAN, ADAM CHAPMAN,** | ) | |
| **and DALE CHAPMAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiffs have filed a motion to compel additional discovery [Dkt. #74] – interrogatories and, as they said at the hearing on this motion, depositions – regarding the steps defendants and their 3rd party vendor went through to produce text messages in the last round of production. Defendants have opposed the motion with their own motion for a protective order barring discovery of their vendor. [Dkt. #83]. For the following reasons, the plaintiffs' motion [Dkt. #74] is denied for the most part, and the defendants' motion [Dkt. #83] is denied as moot given the ruling on plaintiffs' motion.

With sincerest apologies to William Shakespeare, "[f]or never was a story of more woe than this of [Aliza] and her [Adam]." No, "Aliza and her Adam" doesn't have quite the ring to it that "Juliet and her Romeo" does and, as it happens, with good reason, because the tale is not remotely romantic. In our story of woe, Adam's sister (and new mother) gives the bride-to-be Aliza grief over her adults-only wedding reception policy [Dkt. #33, Pars. 21-22], Adam takes his sister's side over his fiancee's [Dkt. #33, Pars. 22-23], and Aliza – living at Adam's castle – vents over the phone with

her parents about Adam and his family. [Dkt. #33, Pars. 24, 27]. Importantly, our lovers are not star-crossed, they are tech-crossed. Adam and his dad listen to the scorned Aliza's conversation with her parents over a remote surveillance system installed in Adam's home [Dkt. #33, Pars. 25, 31]. Aliza knew about the system, but claims not to have known it picked up or recorded sound. [Dkt. #33, Par. 16]. Adam texts Aliza that the families must meet, and our Montagues and Capulets have it out, sans cutlery. [Dkt. # 33, Pars. 32-35]. Aliza gives Adam an ultimatum that the surveillance tech be removed, Adam calls off the wedding and kicks her out, more texts ensue, and Aliza's mom and dad are out 100,000 florins already spent on the wedding. [Dkt. #33, Pars. 37-41]. And so, our Capulets – Aliza, mom, and dad – are suing our Montagues – Adam, mom, and dad – in federal court.

The current fencing is over *additional* ESI discovery that plaintiffs want in *addition* to the *three* productions of text messages and emails defendants have already produced. Some of that production came with defendants' Fed.R.Civ.P. 26 disclosures. Many more were produced in response to plaintiffs' Document Requests for ESI for the period of February 24 to July 1, 2018. That range covered the period from when Aliza and Adam became engaged through when she moved out after the break up. When plaintiff was unsatisfied with that, the parties hammered out an agreement on a process by which defendants would conduct a further search for ESI sent and received by defendants over an expanded time frame – January 1, 2018 to September 30, 2018 – by using certain terms and date restrictions. Plaintiffs are again unsatisfied and want an additional 3 interrogatories regarding the process and want to depose the 3rd party vendor defendants had to hire to conduct the tech-based ESI searches. In total, defendants have now produced 4,862 texts, 132 emails, 3 photos and 36 instagram and Facebook posts. [Dkt. #86, Par. 5]. But, plaintiffs submit that the most recent production – twenty-eight text messages – is suspect because it is too low, in their

judgment, compared with the production of text messages between Aliza and Adam from the earlier period. [Dkt. #74, Pars. 4-5].

Of course it is much lower. It covers a period *after the breakup*, when common experience and common sense would dictate that the number be lower. Search terms like "Aliza, Randy, Beth, Engagement, Wedding, Leora, Ashley, Record[ing], or Google nest" are not going to be as successful as they were for the prior period. Three messages a month venting about an ex-fiancé, under the circumstances presented by this case, seems about right, or, at least, does not seem suspiciously low. There are exes who pine incessantly, and exes who insist, "she's dead to me," and whose behavior is consistent with that ultimate and final rejection. It is thus reasonable, and within the realm of experience, that Randy falls somewhere in the middle. And I have even less objective concern in finding that, given what this case is about, nearly 5,000 texts seems more than reasonable. It must be remembered that evaluation and analysis of cases is not determined by the tendentious speculation of necessarily interested parties but rather is "guided by 'common sense and ordinary human experience.'" *United States v. Montoya De Hernandez*, 473 U.S. 531, 542 (1985). *See generally* Holmes, The Common Law, 1 (Howe ed. 1963) ("The life of the law has not been logic; it has been experience."). In short, nearly 5,000 texts, *in this case* is more than ample proof of the propriety of production.

While most courts acknowledge that "discovery about discovery" can be appropriate under certain circumstances, those circumstances are limited to times when one party's discovery compliance has reasonably been drawn into question, *o* that there is "an adequate factual basis" for an inquiry. *In re Caesars Entm't Operating Co., Inc.*, 2018 WL 2431636, at *13 (Bankr. N.D. Ill. 2018); *see also Crocs, Inc. v. Effervescent, Inc.*, 2017 WL 1325344, at *8 (D. Colo. 2017);

*Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2016 WL 3906712, at *7 (S.D.N.Y. 2016); *Korbel v. Extendicare Health Servs., Inc.*, 2015 WL 13651194, at *15–16 (D. Minn. 2015); *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, 2014 WL 12621613, at *1 (D.S.C. 2014). For an example of a situation when production of emails was deemed to warrant further discovery regarding the adequacy of production, *see H Guys, LLC v. Halal Guys Franchise*, 2020 WL 3578026 (N.D.Ill. 2020).

Such cases follow along the lines of the principles of the Sedona Conference, and the Comment to Principle 6 has particular significance here:

> [A]s a general matter, neither a requesting party nor the court should prescribe or detail the steps that a responding party must take to meet its discovery obligations, and there should be no discovery on discovery, absent an agreement between the parties, or specific, tangible, evidence-based indicia (versus general allegations of deficiencies or mere "speculation") of a material failure by the responding party to meet its obligations. A requesting party has the burden of proving a specific discovery deficiency in the responding party's production.

The Sedona Conference, The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1 (2018).

But, all that the plaintiffs provided here  – in a motion barely 3 pages long – was mere speculation that there must be more texts about the breakup. Plaintiffs did not even cite a case in support of their motion to compel. That is not only a waiver under ordinary circumstances, *see, e.g., United States v. Barr*, 960 F.3d 906, 916 (7th Cir. 2020)("This undeveloped, unsupported argument is waived."); *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir. 2005)("It is

not our job to do the legal research that [plaintiff] has omitted."), it is woefully insufficient to go down the rabbit hole of discovery on discovery. *See e.g. Grant v. Witherspoon*, 2019 WL 7067088, at *1 (S.D.N.Y. 2019)("Where, as here, a party seeks "discovery on discovery," that party "must provide an 'adequate factual basis' to justify the discovery, and the Court must closely scrutinize the request 'in light of the danger of extending the already costly and time-consuming discovery process ad infinitum.' "); *Winfield v. City of New York*, 2018 WL 840085, at *3 (S.D.N.Y. 2018); *Hubbard v. Potter,* 247 F.R.D. 27, 29 (D.D.C. 2008) ("Courts supervising discovery are often confronted by the claim that the production made is so paltry that there must be more that has not been produced or that was destroyed. Speculation that there is more will not suffice; if the theoretical possibility that more documents exist sufficed to justify additional discovery, discovery would never end. Instead of chasing the theoretical possibility that additional documents exist, courts have insisted that the documents that have been produced permit a reasonable deduction that other documents may exist or did exist and have been destroyed."). *British Telecommunications PLC v. IAC/Interactivecorp*, 2020 WL 1043974, at *7 (D. Del. 2020)(insufficiently supported complaints about volume of document production do not justify discovery on discovery).

The naked assertion: "Based on prior production of text messages between Aliza Gross and Adam Chapman, this production appears suspect" – and that was the sum total of plaintiffs' showing in their motion [Dkt. #74, Par. 5] – is the definition of unsupported speculation, and speculation is never sufficient. *Trahan v. Wayfair Maine, LLC,* 957 F.3d 54 (1st Cir. 2020); *United States v. Windham,* 19 F.3d 1190 (7th Cir. 1994); *United States v. Landry*, 257 F.2d 425, 431 (7th Cir. 1958). And it can never underpin the kind of guesswork that is exhibited in the plaintiffs' motion. The same is true of hopes and hunches. *Ray v. Clements*,700 F.3d 993, 1017 (7th Cir 2012).

It is not until their reply brief that plaintiffs make any semblance of a showing – and finally cite a case. But that, of course, is too late. *Reese v. Krones, Inc.*, 2020 WL 3545180, at *2 (7th Cir. 2020)(". . . arguments made for the first time in a reply brief are waived."); *United States v. Desotell*, 929 F.3d 821, 826 (7th Cir. 2019)("In most instances, litigants waive any arguments they make for the first time in a reply brief."); *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019). Even at that, nearly everything raised – again for the first time – in the reply brief is no better than impermissible speculation. Plaintiffs point to one email and ask where the "corresponding email" is [Dkt. #89, at 3]; but perhaps there isn't one. And nothing the guess that one must exist. Plaintiffs complain that text searches were limited to conversations between Adam and Aliza, and among Adam and his family members – Ryan Heller, Ashley Heller, Dale Chapman and Howard Chapman. Plaintiffs also want texts between Adam and all his friends. [Dkt. #89, at 3]. Why, and to what purpose, we don't know. The only point plaintiffs raise that gives one the slightest pause is the claim that defendants have not produced the attachments in at least one text message. Perhaps there are more, but plaintiff is not specific and certainly does not make the required showing. Speculation is not enough.

Even if there is more relevant discovery to be had, we must adhere to the proportionality mandate of Fed.R.Civ.P. 26(b)(1). The discovery sought must not only be relevant, but it must be "proportional" to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Proportionality, like other concepts, requires a

common sense and experiential assessment. *See, e.g., BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 175 (N.D. Ill. 2018) ("Chief Justice Roberts' 2015 Year-End Report on the Federal Judiciary indicates that the addition of proportionality to Rule 26(b) 'crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.' "); *see also Kaye v. New York City Health & Hosps. Corp.*, 2020 WL 283702, at *2 (S.D.N.Y. 2020)("Moreover, such an inquiry must be proportional to the facts and circumstances of the case. Plaintiff has not met her burden on the current record.").[1]

With all due respect to Aliza and her mom and dad, this case is not the complex, gigantic, multi-million dollar gaming industry bankruptcy plaintiffs' counsel hopes to liken it to by relying on the grant of "discovery on discovery" in *In re Caesars Entm't Operating Co., Inc.*, 2018 WL 2431636, at *13 (Bankr. N.D. Ill. 2018). [Dkt. #89, at 2]. There has not been an admission under oath that a litigation hold was never imposed. *Cf. Caesars*, 2018 WL 2431636, at *13. That is the kind of showing, and the kind of case, that merits a lengthy trip down the rabbit hole of discovery on discovery. Nor is this a case where "the wording of the [defendants'] brief leaves just enough wiggle

---

[1] Chief Justice Roberts' 2015 Year-End Report on the Federal Judiciary stated that the addition of proportionality to Rule 26(b) "crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." 5 Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States, available at http://www.supremecourt.gov/publicinfo/year-end/year-endreports.aspx ("2015 Year-End Report"). He stated that the proportionality concept seeks to "eliminate unnecessary or wasteful discovery," and to impose "careful and realistic assessment of actual need." 2015 Year-End Report at 7.

The amendment was intended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." Fed. R. Civ. P. 26(b) Advisory Committee's Note to 2015 amendment. The balancing concern is whether a party has the "discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." *Id.* That balance is met in this case with the thousands of texts and dozens of emails produced here.

room that the Court is not convinced that the requisite thorough search has been completed." *F.F.T., LLC v. Sexton*, 2020 WL 3258623, at *3 (S.D. Ind. 2020). It should be obvious that given what this case is about, and that a large volume of ESI has already been produced at significant expense to the defendants, discovery on discovery with no basis other than plaintiffs' hopeful guess that there must be more texts about an engagement breakup is substantially out of proportion to the needs of the case. The discovery rules are not a ticket, Judge Moran has wisely observed, to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055 at *2 (N.D.Ill.1994). Nearly 5,000 texts is enough. The parties' "ancient grudge" shall not be allowed to "break to new mutiny."

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion for additional discovery on discovery [Dkt. #74] is denied in part, and granted in part but only insofar as defendants must produce the attachments to text in reviewable format within 10 days of this Opinion. Defendants' motion [Dkt. #83] is denied as moot given the ruling on plaintiffs' motion.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

DATE: 7/28/20

8