UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALIZA GROSS, RANDY GROSS and
BETH GROSS,

              Plaintiffs,

              v.

HOWARD CHAPMAN, ADAM
CHAPMAN, and DALE CHAPMAN,

              Defendants.

Case No. 19-cv-02743

Judge Martha M. Pacold

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Aliza Gross, Randy Gross, and Beth Gross brought this eight-count action against Defendants Howard Chapman, Adam Chapman, and Dale Chapman. The Chapmans now move to dismiss Counts 7 and 8 of the Grosses' First Consolidated Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons below, the court grants in part and denies in part the motion [30].

## Background

The court accepts as true the following well-pleaded allegations from the Grosses' complaint and attached exhibit. All possible inferences are drawn in the Grosses' favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Randy Gross and Beth Gross are the parents of Aliza Gross. (Dkt. 29 ¶ 7.) Howard Chapman and Dale Chapman are the parents of Adam Chapman. (*Id.* ¶¶ 8-9.)

In 2018, Aliza and Adam were engaged to be married, with the wedding set for October 2018, and lived together in a home owned by Adam.[1] (*Id.* ¶ 11.)

Adam installed a video surveillance system in the home, told Aliza that the system was for security and insurance purposes, and did not tell Aliza that he could

---

[1] As the parties do in their filings, the court uses first names when referring to an individual plaintiff or defendant.

remotely monitor and record audio conversations. (*Id.* ¶ 16.) Howard helped Adam install the audio recording device. (*Id.* ¶¶ 17-18.)

On the morning of June 27, 2018, Adam (who worked at Howard's company) was at work with Howard and Aliza was alone at home. (*Id.* ¶¶ 8, 22.) Adam called Aliza and informed her that his sister Ashley had requested that the wedding, which "[t]hroughout the planning stage . . . was designed as an adult only formal event, . . . be changed to showcase her [Ashley's] infant daughter," that otherwise Ashley would not attend, and that Aliza "needed to persuade her parents to meet Ashley's demands to avoid irreparable harm with her future in-laws." (*Id.* ¶¶ 21-23.)

After getting off the phone with Adam, Aliza called her parents, Randy and Beth. Aliza, who was still alone at home, used speakerphone. (*Id.* ¶ 24.) Aliza and her parents talked "freely and openly . . . regarding the wedding" for about half an hour "and expressed their frustrations and disappointment with the hostile and divisive environment created by the threats and coercive behavior exhibited by Adam, his parents Howard and Dale and his sister Ashley." (*Id.* ¶ 27.)

Later that day, Adam told Aliza that "while at work he had turned on the remote access to the audio recording device and overheard the conversation between her and her parents," that he and Howard had listened to the recorded conversation, and that "after listening more than once he transcribed certain portions of the conversation." (*Id.* ¶ 31.) "Adam threatened to end the engagement if Aliza's parents did not apologize to his family. When Aliza was unwilling to do so, Adam insisted Aliza pack a bag and leave their home immediately," and Aliza drove to her parents' house. (*Id.*)

That evening, Aliza, Randy, and Beth met face-to-face with Adam, Howard, and Dale. During the meeting, Howard admitted that the conversation had been recorded and confirmed that the Chapmans had all listened to it. Dale separately admitted she had listened to it. (*Id.* ¶¶ 32-33.) Howard and Dale also threatened to reveal the recordings to others. (*Id.* ¶¶ 34-36.)

Later that week, Aliza requested that Adam remove the recording device. (*Id.* ¶¶ 37-38.) Adam broke off the engagement with Aliza and insisted that she leave immediately. (*Id.* ¶ 39.) The wedding was canceled and the Grosses were unable to recover more than $100,000 in deposits. (*Id.* ¶ 41-42.)

Since then, the Chapmans have allegedly disseminated the recorded conversation to others; the Grosses also believe that the Chapmans made and listened to numerous recordings of Aliza's other conversations. (*Id.* ¶¶ 43-44, 46.)

On July 3, Adam posted a photo on Instagram with a caption that read "Celebrating independence #gangsallhere #thisishowwedoit #pregnantbitchesupinhere #congratspopos." (*Id.* ¶ 45.)

Since these events, Aliza has had trouble sleeping, lost her appetite, and lost her desire to speak with friends. She has also begun meeting with a therapist. Beth has been prescribed anti-anxiety medicine to treat her post-traumatic stress disorder. (*Id.* ¶¶ 47-48.) Randy has been affected by his daughter's and wife's depression, anxiety, and mental anguish. (*Id.* ¶ 49.)

On April 23, 2019, Randy and Beth filed an eight-count complaint against Howard and Adam. Aliza subsequently filed a complaint against Adam, Howard, and Dale. The cases were consolidated, and Aliza, Randy and Beth have now filed this eight-count First Consolidated Amended Complaint against Adam, Howard, and Dale. (Dkt. 29.) Counts 1, 2, and 3 are claims under the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*, and the remaining counts arise under state law. Accordingly, the court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). The Chapmans now move to dismiss Counts 7 and 8, invasion of privacy and intentional infliction of emotional distress.

## Discussion

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the claimant "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, the court will accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). On the other hand, "[t]he complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). The court applies these federal pleading requirements even where, as here, the claims arise "under state rather than federal law." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) (citation and internal quotation marks omitted).

## I.    Invasion of Privacy (Count 7)

In Count 7, the Grosses assert a tort claim for intrusion upon seclusion, one of several privacy torts. The Illinois Supreme Court has expressly recognized this tort. *Lawlor v. N. Am. Corp. of Illinois*, 2012 IL 112530, ¶ 35, 983 N.E.2d 414, 425; *see also McGreal v. AT & T Corp.*, 892 F. Supp. 2d 996, 1014 (N.D. Ill. 2012) (noting that "all of the Illinois Appellate Courts have recognized such a tort" and citing cases). The elements of an intrusion upon seclusion claim are: "(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the

intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering." *Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67, 71, 813 N.E.2d 1013, 1017 (2004). Focusing on the third element, the Chapmans argue that the Grosses have failed to allege facts that plausibly suggest the recording intruded on a private matter. "Without private facts, the other three elements of the tort need not be reached." *Id.* at 72.

As the Chapmans point out, examples of inherently private facts include "a person's financial, medical, or sexual life, or a peculiarly private fact of an intimate[,] personal nature." *Acosta v. Scott Labor LLC*, 377 F. Supp. 2d 647, 650 (N.D. Ill. 2005) (quoting *Green v. Chicago Tribune Co.*, 286 Ill. App. 3d 1, 18, 675 N.E.2d 249, 260 (1996) (Cahill, J., dissenting)). The Chapmans argue that the Grosses have failed to allege that the recorded conversation included discussion of any of these types of inherently private facts. While the Grosses do not allege that their discussion fell into the categories listed by the court in *Acosta*, that "list is not exhaustive." *Steinbach v. Vill. of Forest Park*, No. 06-cv-04215, 2009 WL 2605283, at *4 (N.D. Ill. Aug. 25, 2009). In *Steinbach*, the court reasoned that the plaintiff's assertion at the pleading stage that "email communications from her constituents" were private was "not unreasonable," and explained that whether the emails were "actually private" was a question of fact that could not be resolved on a motion to dismiss. *Id.* (citation omitted).

The Grosses have asserted facts that reasonably support their claim that the discussion was private. They have alleged that they "freely and openly" discussed matters of family concern during their call with each other. Courts have frequently held that family matters are private. *See Johnson v. K mart Corp.*, 311 Ill. App. 3d 573, 579, 723 N.E.2d 1192, 1196 (2000) (denying summary judgment on an intrusion upon seclusion claim where a private investigator collected information on, among other things, "family problems"); *Loughnane v. Rogers*, No. 19-cv-00086, 2019 WL 4242486, at *6 (N.D. Ill. Sept. 6, 2019) (allegations that defendants read materials including "emails regarding [plaintiff's] healthcare, finances, and family" were sufficient to allege that the matters on which defendants intruded were private); *Ameristar Casino E. Chicago, LLC v. UNITE HERE Local 1*, No. 16-cv-05379, 2016 WL 7339199, at *6 (N.D. Ill. Dec. 19, 2016) ("Examples of private facts include . . . matters related to domestic or familial relations.") (citing Restatement (Second) of Torts § 652D cmt. b and citing cases).

Next, the Chapmans again cite *Acosta* and argue that "[a] plaintiff must also allege that he attempted to keep private facts private." *Acosta*, 377 F. Supp. 2d at 650. *See also Carroll v. Lynch*, No. 07-cv-01575, 2011 WL 1838563, at *23 (N.D. Ill. May 13, 2011) (a prerequisite of an intrusion upon seclusion claim is "that the Plaintiff has 'attempted to keep private facts private'") (quoting *Acosta*, 377 F. Supp. 2d at 650), *aff'd*, 698 F.3d 561 (7th Cir. 2012). According to the Chapmans, the Grosses have failed to allege any facts suggesting that they affirmatively tried to

keep the contents of their discussion private. But this requirement must be read in light of the facts in *Acosta*. There, the plaintiff was videotaped at work, and did not "plead that he had an expectation of privacy in the area videotaped." *Steinbach*, 2009 WL 2605283, at *4 (distinguishing *Acosta* and holding that since the allegations did not involve displaying anything openly and the plaintiff claimed an expectation of privacy, the privacy element was satisfied). Here, as in *Steinbach*, the Grosses claim they had an expectation of privacy in the setting where they had their conversation. Since the Grosses have alleged that their conversation originally took place in private, they are not required to separately allege that they attempted to keep the conversation private.

The Grosses have plausibly alleged that their discussion included private facts. The court denies the motion to dismiss as to this claim.[2]

## II. Intentional Infliction of Emotional Distress (Count 8)

The Chapmans also urge the court to dismiss the Grosses' claim for intentional infliction of emotional distress (IIED). "Under Illinois law, a plaintiff may recover damages for intentional infliction of emotional distress only if she establishes that (1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017) (citing *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 268–69, 798 N.E.2d 75, 80 (2003)).

The Chapmans focus on the first element and argue the Grosses have not alleged sufficiently extreme and outrageous conduct. The court agrees. Courts "may dismiss an IIED claim if the alleged conduct is not sufficiently [extreme and outrageous]." *Metro. All. of Police v. Ne. Illinois Reg'l Commuter R.R. Corp.*, No. 18-cv-02468, 2020 WL 814870, at *5 (N.D. Ill. Feb. 19, 2020) (citing *Cook v. Winfrey*, 141 F.3d 322, 332 (7th Cir. 1998)). As the Illinois Supreme Court has explained, "to qualify as outrageous, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Feltmeier*, 207 Ill. 2d at 274. This is an objective inquiry that looks to "all the facts and circumstances of a particular case." *Franciski v. Univ. of Chi. Hosps.*, 338 F.3d 765, 769 (7th Cir. 2003) (quoting *Doe v. Calumet City*, 161 Ill.2d 374, 392 (1994)). Illinois courts often consider "'the degree of power or

---

[2] In their reply brief, the Chapmans advance the additional argument that the Grosses have not alleged facts that support the first element, intrusion, with respect to Howard or Dale. However, "[i]n the Seventh Circuit, 'arguments made for the first time in a reply brief are generally treated as waived.'" *Camarena v. Cuccinelli*, No. 19-cv-05643, 2020 WL 550597, at *3 (N.D. Ill. Feb. 4, 2020) (citing *Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011)). While the Chapmans are free to raise this argument in the future, the court declines to consider it now.

authority which a defendant has over a plaintiff'; 'whether the defendant reasonably believed that his objective was legitimate'; and 'whether the plaintiff is particularly susceptible to emotional distress.'" *Molina v. Latronico*, No. 18-cv-06632, 2019 WL 7290615, at *13 (N.D. Ill. Dec. 27, 2019) (citing *Honaker v. Smith*, 256 F.3d 477, 491–92 (7th Cir. 2001) (citing cases)).

The Grosses allege that the Chapmans listened to their conversation, recorded it, and disseminated it to others. Additionally, Adam posted a picture to Instagram that allegedly alluded to the dissolution of the engagement. At the outset, the allegation about the Instagram post, while offensive, falls into the category of "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" that are insufficient to support an IIED claim. *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988) (quoting Restatement (Second) of Torts § 46, comment d, at 73 (1965)). With respect to the eavesdropping allegations, the Seventh Circuit has affirmed dismissal of an IIED claim that was partially based on eavesdropping in much more severe and egregious circumstances. *See Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 700 (7th Cir. 1993) (plaintiff was "subjected to a continuous series of intentionally discriminatory acts, including being precluded from supervising two white employees while she was EEO/Employment Manager, being reprimanded and harassed without cause, and being monitored with a telephone eavesdropping device"); *see also A.J. v. Butler Illinois Sch. Dist. #53*, No. 17-cv-02849, 2019 WL 4014088, at *7 (N.D. Ill. Aug. 26, 2019) (IIED claim not viable where defendant illicitly recorded a phone call with the plaintiff and played the recording for a school superintendent).

However, the Grosses argue that courts more commonly find extreme and outrageous conduct where the defendant "stood in a position of power or authority relative to the plaintiff." *Feltmeier*, 207 Ill. 2d at 273 (citing *McGrath*, 126 Ill. 2d at 86–89). The Grosses allege that Adam "attempted to exercise domination and control over the entirety of his relationship with Aliza." (Dkt. 29 ¶ 20.) In support of this claim, the Grosses allege that Adam engaged in "continuous criticism" of Aliza and listened to her phone calls. (*Id.*) In *McGrath*, the court explained that the extreme and outrageous requirement may be satisfied where there was "abuse by the defendant of some relation or position which gives him actual or apparent power to damage the plaintiff's interests. The result is something very like extortion." 126 Ill. 2d at 87 (quoting *Milton v. Illinois Bell Telephone Co.* 101 Ill. App. 3d 75, 79, 427 N.E.2d 829, 832 (1981)). The Grosses argue that because Adam had established a position of power over Aliza, it was extreme and outrageous to pit his family against hers, record her conversation with her parents, and break off the engagement. (Dkt. 40 at 12.)

Such allegations might be sufficient under different circumstances, but here the alleged nature of the conversation takes this case outside the scenario described in *McGrath*. The Grosses allege that the conversation occurred in response to Adam's sister's demand that her infant be featured in the wedding, and that the

Grosses "talked freely and openly . . . regarding the wedding and expressed their frustrations and disappointment with the hostile and divisive environment created by the threats and coercive behavior exhibited by" the Chapmans. (Dkt. 29 ¶¶ 21-27.) Assuming the truth of the allegations of listening to, recording, and disclosing such a conversation, as the court is required to at this stage, the allegations are troubling and should not be minimized, but they do not plausibly suggest legally actionable tortious conduct for purposes of this particular count considering the relevant case law and all the circumstances.

For similar reasons, the allegations do not plausibly suggest that the Chapmans intended to cause distress "so severe that no reasonable man could be expected to endure it," or were aware of a high probability that their actions would cause such distress. *Pub. Fin. Corp. v. Davis*, 66 Ill. 2d 85, 90, 360 N.E.2d 765, 767 (1976) (quoting Restatement (Second) of Torts § 46, comment J (1965)). "It is not sufficient 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *Cook*, 141 F.3d at 331 (quoting *Pub. Fin. Corp.*, 66 Ill. 2d at 90, 360 N.E.2d at 767). Two situations where courts typically find this requirement satisfied are (1) when the defendant's actions "by their very nature[ ] were likely to cause severe distress" and (2) "when the defendant knew that a plaintiff was particularly susceptible to such distress." *Honaker*, 256 F.3d at 494. Again, although the allegations, taken as true, are troubling, neither condition is present here, given the nature of the conversation about wedding planning frustrations, and given that the Grosses have not alleged that they were particularly susceptible to distress.

Finally, the Chapmans also argue that the complaint does not plausibly suggest that the Grosses suffered severe emotional distress. "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Davis*, 66 Ill. 2d at 90 (quoting Restatement (Second) of Torts § 46, comment J (1965)). The Chapmans argue that the Grosses have only alleged the type of "shame, humiliation and worry" the court held was insufficient to support an IIED claim in *Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill. App. 3d 30, 38, 684 N.E.2d 935, 942 (1997). But in *Adams*, the court noted that there was "no evidence to show the severity of the distress he suffered, i.e., that he was hospitalized, sought and received psychiatric treatment, or even was prescribed medication." *Id.* at 39. Here, the Grosses have alleged that Aliza started meeting with a therapist and Beth was prescribed anti-anxiety medicine to treat her "post-traumatic stress disorder." (Dkt. 29 ¶ 47-48.)

At the pleading stage, the court must draw all reasonable inferences in the Grosses' favor. The court cannot conclude that the Grosses' allegations of severe emotional distress are legally insufficient. *See Cook*, 141 F.3d at 331 ("Whether Cook actually suffered from versions of any of these symptoms serious enough to

amount to severe emotional distress is a factual question that is not appropriately resolved on a motion to dismiss the complaint."). But since the complaint does not plausibly suggest that the conduct in question was sufficiently extreme or outrageous or that it involved the required state of mind, the court dismisses the claim for intentional infliction of emotional distress (Count 8). *See id.* at 331 (affirming dismissal for failure to allege sufficiently extreme or outrageous conduct and stating, pre-*Twombly* and *Iqbal*, that since the complaint "intimated that the conduct alleged constituted the full extent of the tortious activity," the district court was "justified in testing the conduct alleged against the Illinois standard for intentional infliction of emotional distress.").

The Chapmans seek dismissal with prejudice, relying on the fact that the Grosses have already filed multiple amended complaints. (Dkt. 44 at 10-11.) Some of this procedural history, however, stems from the consolidation of the Grosses' previously separate cases. This is the first substantive decision by the court identifying deficiencies in the complaint. So it is appropriate to allow an opportunity to amend.

## Conclusion

For the reasons given above, the court grants in part and denies in part the motion to dismiss [30]. The Grosses' claim for intentional infliction of emotional distress is dismissed without prejudice. The motion is denied in all other respects. If the Grosses wish to file an amended complaint consistent with this opinion, they must do so by September 14, 2020.

Date: July 31, 2020                          s/ Martha M. Pacold